Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
Jordan Elias (State Bar No. 228731)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
msobol@lchb.com
rheller@lchb.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ROMACK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BITCASA, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**NATURE OF THE ACTION**

1. This proposed class action alleges that Bitcasa, Inc. ("Bitcasa") has engaged in unfair and illegal conduct in connection with its recent abrupt elimination of its "Infinite" data storage plan. Bitcasa's conduct alleged herein has already caused Plaintiff and other Infinite plan customers significant harm. Moreover, immediate injunctive relief is necessary to prevent Plaintiff and other Infinite plan customers from suffering further irreparable harm. Plaintiff is filing herewith a motion for a Temporary Restraining Order to stop Bitcasa from carrying out its

plan to permanently delete, on Saturday November 15, 2014, Plaintiff's and other Infinite plan customers' important and irreplaceable data.

2.      Bitcasa promised Plaintiff and other customers an "Infinite" data storage plan, whereby they could upload and store an unlimited amount of electronic data on Bitcasa's "cloud" (*i.e.*, remote) data storage servers for a fixed fee.  On October 23, 2014, Bitcasa abruptly announced that it was eliminating the Infinite plan.  For those customers who are enrolled in the Infinite plan, Bitcasa is requiring them to act on or before November 15, 2014 (*i.e.*, within just 23 days of Bitcasa's announcement) to either: (a) accept a new Bitcasa plan that is significantly more expensive and/or that provides far less data storage capacity; or (b) download (*i.e.*, remove) all of their stored data out of Bitcasa's systems, with the warning that for those customers who do not accept a new Bitcasa plan, any data that they have remaining on Bitcasa's systems as of the November 15, 2014 deadline will be permanently deleted by Bitcasa.  In essence, Bitcasa is holding these customers' data for ransom, requiring them to accept costlier and inferior data storage plans from Bitcasa or risk losing their important data.

3.      The time frame imposed by Bitcasa for customers to act (*i.e.*, approximately 23 days) is inadequate and unreasonable, and is in breach of Bitcasa's contractual obligations to Plaintiff and other Infinite plan customers.  Even if a customer promptly saw Bitcasa's October 23, 2014 announcement, the 23-day window imposed by Bitcasa makes it impracticable, and in many cases *impossible*, for customers to remove all of their stored data from Bitcasa's systems by the deadline.  Since Bitcasa's October 23, 2014 announcement, Plaintiff and other customers have been required to spend inordinate amounts of time and energy, and to incur out-of-pocket costs, trying to remove as much of their stored data as they can from Bitcasa's systems by the November 15, 2014 deadline.  Despite those efforts, Plaintiff and numerous other Infinite plan customers will lose important and irreplaceable data if Bitcasa goes forward with its plan to delete their remaining data on November 15, 2014.

4.      The above burdens on Plaintiff and other customers have been aggravated by problems with Bitcasa's own systems.  These problems have caused the downloading of data

CLASS ACTION COMPLAINT

1   from Bitcasa's systems to be slowed, further thwarting and complicating customers' ability to

2   remove data from Bitcasa's systems before the November 15, 2014 deadline.

3        5.     Bitcasa's misconduct alleged herein constitutes an express breach of contract and a

4   breach of the implied covenant of good faith and fair dealing, and violates California's Unfair

5   Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

6        6.     Unless Bitcasa is enjoined from carrying out its plan to delete Plaintiff's and other

7   Infinite plan customers' remaining data on November 15, 2014, Plaintiff and other Infinite plan

8   customers will lose important and irreplaceable data, and will suffer irreparable harm.  To stop

9   this from happening, Plaintiff is filing herewith a motion for Temporary Restraining Order to:

10        (a) Enjoin Bitcasa from deleting, disabling, or impeding access to any data or

11   content stored on, or uploaded to, Bitcasa's cloud computing platform or other similar systems,

12   by Plaintiff and other Infinite plan subscribers, for 14 days from the date of entry of the

13   Temporary Restraining Order, subject to further extensions as may be ordered by the Court; and

14        (b) Require Bitcasa to meet and confer with Plaintiff, within 10 days of the date of

15   entry of the Temporary Restraining Order, regarding an agreement on a reasonably sufficient

16   period of time for Plaintiff and other Infinite plan subscribers to remove their data from Bitcasa's

17   cloud computing platform or other similar systems.

18        7.     In addition to injunctive relief, Plaintiff seeks damages and restitution on behalf of

19   himself and the putative Class of Infinite plan customers.

20   **PARTIES**

21        8.     Plaintiff Shawn Romack is an individual residing in North Las Vegas, Nevada.

22   Mr. Romack is a citizen of Nevada.

23        9.     Defendant Bitcasa, Inc. ("Bitcasa") is a California corporation headquartered in

24   San Mateo, California, which is Bitcasa's principle place of business.  Bitcasa is a provider of

25   "cloud" (*i.e.*, remote) data storage services.  Bitcasa's revenues from consumer data storage

26   services total several million dollars annually.

27

28

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), as there are numerous Class members who are citizens of states other than Bitcasa's state of citizenship, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Bitcasa because Bitcasa is headquartered in California; a substantial part of the wrongdoing alleged in this Complaint took place in California; Bitcasa is authorized to do business, and does a substantial portion of its business, in California; Bitcasa has sufficient minimum contacts with California; and Bitcasa intentionally avails itself of markets in California through the promotion, marketing and sale of its services in California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Bitcasa is headquartered in California and, on information and belief, its operations relevant to the allegations and claims in this Complaint predominately emanate from California.  On information and belief, the contracts, policy and practice decisions, and misconduct at issue in this case predominately emanated from California.

13.     Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because Bitcasa is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

14.     **Intra-District Assignment**.  Pursuant to the N.D. Cal. Civil Local Rules 3-2 and 3-5, Plaintiff requests assignment to the San Francisco Division of the Northern District of California.  Bitcasa is headquartered in San Mateo County and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in San Mateo County.

## COMMON FACTUAL ALLEGATIONS

15.     Bitcasa provides "cloud" (*i.e.,* remote) data storage services to consumers.  Using Bitcasa's services, customers can upload and store their electronic data remotely on Bitcasa's servers.

16.     Bitcasa has offered customers certain data storage plans. One of the plans that Bitcasa offered customers was the "Infinite" plan, pursuant to which Bitcasa promised customers that they could store an unlimited amount of data in Bitcasa's systems for a fixed fee. The fixed cost of the Infinite plan has been approximately $99 per year or $10 per month, although customers who participated in Bitcasa's "beta" program for the Inifinite plan (essentially, the initial wave of Infinite plan users) were promised a discounted rate for the plan (approximately $49 per year) on an ongoing basis.

17.     Bitcasa heavily marketed the Infinite plan to consumers, including the fact that such plan provided customers with access to unlimited data storage space for a low flat fee. Bitcasa encouraged customers to sign up for the Infinite plan and to upload and store significant amounts of data pursuant the Infinite plan.

18.     Numerous consumers, including Plaintiff, have signed up for the Infinite plan, and pursuant to such plan have uploaded and stored electronic data on Bitcasa's systems.

19.     In approximately November 2013, Bitcasa announced that it was no longer offering the Infinite plan to new customers. However, Bitcasa promised customers who were enrolled in the Infinite plan at that time that they would be "grandfathered" in, meaning they could remain enrolled in the Infinite plan and could continue to renew their subscriptions (*e.g.*, for an additional year) to the Infinite plan after Bitcasa's November 2013 announcement.

20.     On or around October 23, 2014, Bitcasa abruptly announced that it was completely eliminating, and would no longer support, the Infinite plan for those customers still enrolled in the plan. Bitcasa made this announcement via a press release. Bitcasa also sent emails to at least some Infinite plan customers about the announcement.

21.     As set forth in Bitcasa's press release and in its emails to customers, Bitcasa is requiring existing Infinite plan customers to act by no later than November 15, 2014—*i.e.*, within just 23 days of Bitcasa's announcement—to either: (a) accept a new Bitcasa plan that is significantly more expensive and/or that provides data storage limits the Infinite plan does not have; or (b) download (*i.e.*, remove) all of their stored data out of Bitcasa's systems, with the warning that for those customers who do not accept a new Bitcasa plan, any data that they have

remaining on Bitcasa's systems as of the November 15, 2014 deadline will be permanently deleted by Bitcasa.

22. The new plans are as follows: (1) up to 10 terrabytes of data storage for approximately $99 per month or $999 per year (*i.e.*, approximately *ten times* the cost of the Infinite plan); or (2) up to 1 terrabyte of data storage for approximately $99 per year or $10 per month.

23. Plaintiff and numerous other members of the putative Class were in the middle of one-year Infinite plan subscriptions when Bitcasa made its October 23, 2014 announcement and policy change eliminating the Infinite plan.

24. The "Terms of Service" that apply to Plaintiff's and the other putative class members' purchases of services from Bitcasa, purport to vest Bitcasa with discretion to terminate customers' data accounts at any time. However, the Terms of Service expressly provide that before terminating a customer's data account, Bitcasa "**will make commercially reasonable efforts to let you know in advance and help you retrieve data**." Exhibit A hereto (Terms of Service), p.19 (emphasis added).

25. Contrary to its contractual obligation and contrary to California law prohibiting unfair business practices, Bitcasa intends to terminate, on November 15, 2014, Plaintiff's and other Infinite plan customers' data accounts and their remaining data without providing them reasonably sufficient time to first retrieve their data.

26. In essence, Bitcasa is holding these customers' data for ransom, attempting to force them to accept significantly more expensive and/or otherwise inferior Bitcasa storage plans or risk losing their important data.

27. The tight time frame that Bitcasa has provided Plaintiff and other Infinite plan customers to act—*i.e.,* approximately 23 days, even assuming a customer promptly saw Bitcasa's October 23, 2014 announcement—is inadequate and unreasonable. Such time frame renders it impracticable, and in many cases *impossible*, for customers to remove their data from Bitcasa's systems by the November 15, 2014 deadline, given the speed at which the data can be

1    downloaded from Bitcasa's systems. The 23-day window is further unreasonable because

2    customers also need to, during that period, research and identify alternative storage options.

3         28.    Plaintiff and other Infinite plan customers are being forced to spend inordinate

4    amounts of time and energy, and to incur out-of-pocket costs, trying to retrieve as much of their

5    data as they can by Bitcasa's imposed November 15, 2014 deadline. Despite these efforts,

6    Plaintiff and other Infinite plan customers will not be able to retrieve all of their stored data by the

7    deadline, and will lose important and irreplaceable data if Bitcasa follows through with its plan to

8    delete their remaining data on November 15, 2014.

9         29.    These burdens and harm are being exacerbated by problems with Bitcasa's own

10   systems, which have caused the speed of downloading data from Bitcasa's systems to be slowed,

11   further thwarting and complicating customers' ability to remove data from Bitcasa's systems by

12   the November 15, 2014 deadline.

13        30.    At all relevant times, Bitcasa has been aware (or clearly should have been aware)

14   that the 23-day window for customers to act is insufficient, unreasonable, and unfair to customers.

15   As a company that is in the business of the uploading and downloading of data from cloud

16   storage, Bitcasa must have understood, prior to its October 23, 2014 announcement and change

17   in policy, that 23 days was not going to be sufficient time for customers to remove data from

18   Bitcasa's systems (let alone sufficient time to remove their data *and* research and identify

19   alternative storage options), and that the announcement and change in policy would:

20              a.    unfairly pressure Infinite plan customers to accept Bitcasa's costlier and

21   inferior plans to avoid losing their data;

22              b.    cause Infinite plan customers to incur significant costs and burdens as they

23   rush to try to save as much data from deletion as they can before the November 15, 2014

24   deadline; and

25              c.    cause Infinite plan customers to lose their data because they did not receive

26   notice and/or because they did not have sufficient time to remove their data from Bitcasa's

27   systems by the November 15, 2014 deadline.

28

CLASS ACTION COMPLAINT

31.     Bitcasa's conduct is all the more egregious given that customers were encouraged by Bitcasa to upload significant amounts of data pursuant to the Infinite plan and promise of unlimited storage space.

32.     Since Bitcasa made the October 23, 2014 announcement, Plaintiff and numerous other customers have complained to Bitcasa that they cannot remove all their data by the November 15, 2014 deadline.  Numerous customers have also complained to Bitcasa that these problems are being exacerbated by problems with Bitcasa's own systems.  Despite being on notice of these problems and of the harm being caused, and that will be caused, to its customers, Bitcasa's plans have not changed.  An email sent by Bitcasa to at least some Infinite plan customers on November 11, 2014, titled "Final Warning," confirms that Bitcasa still plans to delete Plaintiff's and other Infinite plan customers' remaining data on November 15, 2014.

## PLAINTIFF'S FACTUAL ALLEGATIONS

33.     Plaintiff Shawn Romack initially signed up for Bitcasa's Infinite plan in 2013, paying $99 for a one-year subscription to the service.

34.     In approximately June 2014, Mr. Romack renewed his subscription to the Infinite plan for an additional one-year period, at a cost of $99.  Mr. Romack's one-year subscription was ongoing, and had several months remaining, at the time Bitcasa made its October 23, 2014 announcement and change in policy eliminating the Infinite plan.

35.     On October 23, 2014, Bitcasa sent Mr. Romack an email stating that Bitcasa was eliminating the Infinite plan, and that, by no later than November 15, 2014, he had to either accept a different Bitcasa plan that was nearly *ten times* more expensive than his Infinite plan, and which was subject to storage limits that his Infinite plan was not subject to, or remove all of his data from Bitcasa's systems, with the warning that if he did not accept the new costlier plan, any of his data remaining on Bitcasa's system as of November 15, 2014 would be permanently deleted by Bitcasa.

36.     As of October 23, 2014, Mr. Romack had approximately between 7 and 8 terrabytes of data stored on Bitcasa's systems pursuant to his Infinite plan.

37.     Since reading Bitcasa's October 23, 2014 email, Mr. Romack has been working feverishly to try to download as much of his data from Bitcasa's systems as he can by the November 15, 2014 deadline, trying to minimize the data that he will lose. Mr. Romack has had to devote considerable time and energy to this process, time and energy that he could and would otherwise have spent on other matters. Mr. Romack also has had to incur expenses—specifically, pay for an external hard drive—to house data he is able to remove from Bitcasa's systems until he can identify an acceptable, secure data storage service with whom he can store his data.

38.     Despite his significant efforts to remove his data from Bitcasa's systems, Mr. Romack will not be able to retrieve all of his data by the November 15, 2014 deadline given the speed at which data can be downloaded from Bitcasa's systems. Problems with Bitcasa's systems (including corrupted data) have made it even more difficult and slow for Mr. Romack to retrieve data.

39.     If Bitcasa goes through with its plan to delete his remaining data on November 15, 2014, Mr. Romack will lose important data, including photographs and other personal data that is not replaceable.

40.     Had Mr. Romack known that Bitcasa would act in the manner it has acted, he would not have signed up for or paid for Bitcasa's Infinite plan.

41.     Bitcasa's conduct has already caused Mr. Romack considerable harm. If Bitcasa goes forward with its plan to delete Mr. Romack's remaining data on November 15, 2014, he will be irreparably harmed by losing important and irreplaceable data.

42.      Prior to filing this suit, Mr. Romack notified Bitcasa that its conduct alleged herein was unfair and violated Bitcasa's Terms and Service.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this class action lawsuit on behalf of himself and the proposed members of the "Class" pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

44.     Plaintiff seeks certification of the following "Class":

CLASS ACTION COMPLAINT

All persons in the United States who were enrolled in Bitcasa's Infinite data storage plan as of October 23, 2014.

45.     Specifically excluded from the Class are Bitcasa and any entities in which Bitcasa has a controlling interest, Bitcasa's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

46.     ***Numerosity.***  Plaintiff does not know the exact number of Class members but believes that the Class comprises at least several thousand consumers throughout the United States.  As such, Class members are so numerous that joinder of all members is impracticable.

47.     ***Commonality and predominance.***  Well-defined, nearly identical legal or factual questions affect all Class members.  These questions predominate over questions that might affect individual Class members.  These common questions include, but are not limited to, the following:

a.     Whether Bitcasa breached its contractual obligations to Plaintiff and the Class by failing to provide them reasonably sufficient time to retrieve their data from Bitcasa's systems;

b.     Whether Bitcasa's conduct constitutes a breach of the implied covenant of good faith and fair dealing;

c.     Whether Bitcasa's conduct violated California Business & Professions Code § 17200 *et seq*,

d.     Whether Plaintiff and the Class are entitled to damages and/or restitution; and

e.     Whether Bitcasa should be enjoined from deleting the data of Plaintiff and the Class from its systems without first providing them reasonably sufficient time to retrieve their data.

48.     ***Typicality.***  Plaintiff's claims are typical of Class members' claims.  Plaintiff and the Class members are all Bitcasa Infinite plan customers and have all been subject to Bitcasa's misconduct alleged herein.

CLASS ACTION COMPLAINT

49.     *Adequacy.*  Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel with considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

50.     *Superiority.*  A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons without limitation:

    a.     Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually, so it would be impracticable for Class members to seek individual redress for Bitcasa's conduct;

    b.     Even if Class members could afford individual litigation, the court system could not.  Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court; and

    c.     Plaintiff anticipates no unusual difficulties in managing this class action.

51.     Final injunctive relief for Plaintiff and the Class as a whole is appropriate in this case because Bitcasa has acted and/or refused to act on grounds that apply generally to Plaintiff and the Class.

## CHOICE OF LAW

52.     California law applies to the claims of Plaintiff and the Class.  Bitcasa's Terms of Service expressly provide that California law applies.  Exhibit A hereto (Terms of Service), at pp. 25-26.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

(On Behalf the Class)

53.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

- 11 -

54.     Bitcasa entered into valid contractual agreements with Plaintiff and all Class members.

55.     The material terms of Bitcasa's contracts with Plaintiff and the Class members included Bitcasa's obligation that, before terminating customers' data accounts, Bitcasa would would "make commercially reasonable efforts to let you know in advance and help you retrieve data."

56.     Plaintiff and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Bitcasa.

57.     Bitcasa has breached, and pursuant to its plans will breach, its contracts with Plaintiff and the Class, including by terminating their data accounts and deleting their data without providing them sufficiently reasonable time to retrieve their data from Bitcasa's systems.

58.     By reason of Bitcasa's contractual breaches, Plaintiff and the Class have suffered and will suffer damages, in an amount to be proven at trial.

59.     Absent an order from the Court requiring Bitcasa to perform as it is required to do under its contracts with Plaintiff and the Class, Plaintiff and the Class will be further and irreparably harmed.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

(On Behalf of the Class)

60.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

61.     A covenant of good faith and fair dealing is implied in every contract, including in the contracts between Bitcasa and Plaintiff and the Class members.

62.     Where a contract vests one party with discretion, the duty of good faith and fair dealing applies, and the party exercising the discretion must do so in a manner that satisfies the objectively reasonable expectations of the other party.  A party may not perform an agreement in

CLASS ACTION COMPLAINT

1    a manner that would frustrate the basic purpose of the agreement and/or deprive the other party of

2    its rights and benefits under the agreement.

3        63.    Bitcasa has abused, and pursuant to its plans will abuse, any discretion it has under

4    the Terms of Service to change its service plans, terminate customers' data accounts, and/or

5    delete customers' data from its systems.  Bitcasa's conduct in exercising its discretion, as alleged

6    herein, is inconsistent with the reasonable expectations of Plaintiff and the Class, and is

7    inconsistent with what an objectively reasonable consumer would have expected under the

8    circumstances.

9        64.    Bitcasa has acted, and pursuant to its plans will act, in a manner that frustrates a

10   basic purpose of its contracts with Plaintiff and the Class, and has deprived Plaintiff and the Class

11   of benefits and rights that they are entitled to under their contracts with Bitcasa.

12       65.    Plaintiff and all Class members gave consideration that was fair and reasonable,

13   and have performed all conditions, covenants, and promises required to be performed under their

14   contracts with Bitcasa.

15       66.    By reason of Bitcasa's breaches of the implied covenant of good faith and fair

16   dealing, Plaintiff and the Class have suffered and will suffer damages, in an amount to be proven

17   at trial.

18       67.    Injunctive relief is required to prevent Bitcasa from causing further and irreparable

19   harm to Plaintiff and the Class.

20

21                          **COUNT III**
                 **Violations of Cal. Bus. & Prof. Code §§ 17200 *et seq.***

22                       (On Behalf of the Class)

23       68.    Bitcasa's  practices alleged herein constitute unlawful and unfair business

24   practices in violation of California Business and Professions Code § 17200 *et seq*. (the "UCL").

25       69.    Bitcasa has violated, and pursuant to its plans will violate, the "unlawful" prong of

26   the UCL, including through its contractual breaches alleged herein.

27       70.    Bitcasa has violated, and pursuant to its plans will violate, the "unfair" prong of

28   the UCL by its conduct alleged herein.

CLASS ACTION COMPLAINT

71.     Bitcasa's conduct alleged herein is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Having promised Plaintiff and the Class access to unlimited data storage space pursuant to the Infinite plan, Bitcasa has abruptly eliminated the Infinite plan and imposed what it knows (or clearly should know) to be an inadequate and unreasonable time frame for these customers to act or risk losing their data.  Bitcasa is effectively holding these customers' data for ransom, forcing them to either accept significantly more expensive and/or otherwise inferior Bitcasa plans or risk losing their data.  Bitcasa is also deliberately and/or recklessly providing these customers with insufficient time to retrieve their data from Bitcasa's systems before the data will be deleted.  Despite being aware of these issues, being aware of the harm that its conduct has caused and will cause its customers, and being aware of the fact that problems with its own systems are exacerbating the situation, Bitcasa nevertheless intends to carry out its plan to delete these customers' remaining data on November 15, 2014.

72.     Bitcasa's conduct alleged herein has substantially harmed, and will continue to substantially harm, Plaintiff and the Class, with no counter-veiling utility, let alone utility that outweighs the significant harm to consumers.

73.     Bitcasa's conduct alleged herein also violates, and pursuant to its plans will violate, established California public policy, including but not limited to the policy underlying the implied covenant of good faith and fair dealing that has long been part of California law.

74.     As a result of the foregoing, Plaintiff and the Class have and will been injured and have lost and will lose money or property, and are entitled to restitution and injunctive relief.

75.     Unless restrained by this Court, Bitcasa will continue to engage in unfair and unlawful conduct in violation of California Business & Professions Code § 17200 *et. seq.*

76.     Injunctive relief is required to prevent Bitcasa from causing further and irreparable harm to Plaintiff and members of the public.

## **PRAYER FOR RELIEF**

On behalf of himself and the Class, Plaintiff requests that the Court order relief as follows:

a.      A Temporary Restraining Order:

- 14 -

1                    i.       Enjoining Defendant Bitcasa, Inc. ("Bitcasa") from deleting,

2    disabling, or impeding access to any data or content stored on, or uploaded to, Bitcasa's cloud

3    computing platform or other similar systems, by Plaintiff and other Infinite plan subscribers, for

4    14 days from the date of entry of the Temporary Restraining Order, subject to further extensions

5    as may be ordered by the Court; and

6                    ii.      Requiring Bitcasa to meet and confer with Plaintiff, within 10 days

7    of the date of entry of the Temporary Restraining Order, regarding an agreement on a reasonably

8    sufficient period of time for Plaintiff and other Infinite plan subscribers to remove their data from

9    Bitcasa's cloud computing platform or other similar systems.

10            b.      An order enjoining Bitcasa from its misconduct as alleged herein;

11            c.      An order certifying the proposed Class and appointing Plaintiff and his

12    counsel to represent the Class;

13            d.      A judgment awarding Plaintiff and the Class members restitution,

14    including, without limitation, restitutionary disgorgement of all profits that Bitcasa may have

15    received as a result of its misconduct as alleged;

16            e.      A judgment awarding Plaintiff and the Class members actual damages;

17            f.      Pre-judgment and post-judgment interest;

18            g.      Attorneys' fees, expenses, and the costs of this action; and

19            h.      All other and further relief as this Court deems necessary, just, and proper.

20

21                              **<u>JURY DEMAND</u>**

22    Plaintiff demands a trial by jury on all issues so triable.

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2     Dated:  November 13, 2014          Respectfully submitted,

3                                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

4

5                                       By: */s Michael W. Sobol*
                                        Michael W. Sobol

6
                                        Michael W. Sobol
7                                       msobol@lchb.com
                                        Roger N. Heller
8                                       rheller@lchb.com
                                        Jordan Elias
9                                       jelias@lchb.com
                                        LIEFF CABRASER HEIMANN & BERNSTEIN LLP
10                                      275 Battery Street, 29th Floor
                                        San Francisco, CA  94111
11                                      Telephone:  (415) 956-1000

12                                      *Attorneys for Plaintiff*

13    1204786.2

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Exhibit A

Platform     **Personal**



Terms of Service          Privacy Policy          DMCA Policy

Pricing/Refunds           Security                Acceptable Use

Terms of Service

Last Updated: November 19, 2013

Thank you for using Bitcasa! These Terms of Service (the "Terms") govern your access to and use of the Bitcasa, Inc. ("Bitcasa", "we" or "our") websites and services (the "Services"), so please carefully read them before using the Services. By using the Services you agree to be bound by these Terms. If you are using the Services on behalf of an organization, you are agreeing to these

Terms for that organization and promising that you have the authority to bind that organization to these terms. In that case, "you" and "your" will refer to that organization.

You may use the Services only in compliance with these Terms. You acknowledge and agree that you have the power to form a contract with Bitcasa and are not barred under any applicable laws from doing so. The Services may continue to change over time as we refine and add more features. We may stop, suspend, or modify the Services at any time without prior notice or liability to you. We may also remove any content from our Services at our discretion without prior notice or liability to you. Certain features of the Services may be

subject to additional guidelines, terms, or rules, which will be posted on the Services in connection with such features. All such additional terms, guidelines, and rules are incorporated by reference into this Agreement. To the extent you are a subscriber that has entered into an agreement relating to the Services with one of our service partners and there is a direct conflict between that agreement and these Terms, the agreement with our service partner applies.

Access to the Service

Subject to the terms of this Agreement and your payment of the applicable fees in accordance with Bitcasa's Pricing and Refund Policy, Bitcasa grants you a non-transferable, non-exclusive, license to use

the Services solely for (a) your personal, noncommercial use if you have subscribed to the Services as an individual user under Bitcasa's free or paid plans or (b) your commercial use in accordance with the applicable restrictions outlined in Bitcasa's then-current pricing list if you have subscribed to the Services as a commercial user. If at any time Bitcasa reasonably believes in its sole discretion that you are using the Service beyond this scope, Bitcasa may terminate your access to the Service with no additional liability to you. The rights granted to you in these Terms are subject to the following restrictions: (a) you shall not license, sell, rent, lease, transfer, assign, distribute, host, or otherwise commercially exploit the Services; (b) you

shall not modify, make derivative works
of, disassemble, reverse compile or
reverse engineer any part of the Services;
(c) you shall not access the Services in
order to build a similar or competitive
service; and (d) except as expressly
stated herein, no part of the Service may
be copied, reproduced, distributed,
republished, downloaded, displayed,
posted or transmitted in any form or by
any means. Any future release, update, or
other addition to functionality of the Site
or Services shall be subject to the terms
of this Agreement.

Your Digital Belongings & Your Privacy

By using our Services you may provide us
with information, files, and/or folders
that you submit to Bitcasa (together,
"your digital belongings"). You and/or

your suppliers retain full ownership to your digital belongings. We don't claim any ownership to any of it. These Terms do not grant us any ownership rights to your digital belongings or intellectual property except for the limited rights that are needed to run the Services, as explained below.

We may need your permission to do things you ask us to do with your digital belongings, for example, hosting your data, or sharing it at your direction. This includes product features visible to you, for example, image thumbnails or document previews. It also includes design choices we make to technically administer our Services, for example, how we redundantly backup data to keep it safe. You give us the permissions we need

to do those things solely to provide the Services. This permission also extends to trusted third parties we work with to provide the Services, for example Amazon, which provides our storage space (again, only to provide the Services). As such, you grant, and you represent and warrant that you have the right to grant, to Bitcasa an irrevocable, nonexclusive, royalty-free and fully paid, worldwide, sublicenseable license to reproduce, distribute, publicly display and perform, prepare derivative works of, and otherwise use your digital belongings, solely for the purposes of providing you with the Services.

To be clear, aside from the rare exceptions we identify in our Privacy Policy, no matter how the Services

change, we won't share your content with others for any purpose unless you direct us to. How we collect and use your information generally is also explained in our Privacy Policy.

You are solely responsible for your conduct, the content of your digital belongings and your communications with others while using the Services. For example, it's your responsibility to ensure that you have the rights or permission needed to comply with these Terms, host your digital belongings on the Service, and transmit your digital belongings to others.

We may choose, in our sole discretion, to review public content (e.g., comments on our blog) for compliance with our

community guidelines, but you acknowledge that Bitcasa has no obligation to monitor any information on the Services. We are not responsible for the accuracy, completeness, appropriateness, or legality of files, user posts, or any other information you may be able to access using the Services.

Sending Your Digital Belongings

The Services provide features that allow you to send your digital belongings to others via a link. When you elect to send digital belongings via a link, please be aware that there are no restrictions on what the recipient will do with the digital belongings you sent. There are many things that other users may do with those digital belongings (for example: view it, download it, copy it, re-send it). Please

consider carefully what you choose to send publicly. Please note that if a link you share is posted (by either you or someone you share it with) on a publicly available website, the link may show up in search engines as a part of the "indexing" process that search engines use to identify content and links contained within web pages. Bitcasa has no responsibility for what a recipient will do with the digital belongings you send to them.

Your Responsibilities

Digital content may be protected by intellectual property rights of others. Please do not copy, upload, download, or share files unless you have the right to do so. You acknowledge and agree that you, and not Bitcasa, are fully responsible and

liable for what you copy, share, upload, download or otherwise use while using the Services. You must not upload spyware or any other malicious software to the Service that might harm the Service, any computer network, or other Bitcasa users.

You acknowledge and agree that you, and not Bitcasa, are solely responsible for maintaining and protecting all of your digital belongings. Bitcasa will not be liable for any loss or corruption of your digital belongings, or for any costs or expenses associated with backing up or restoring any of your digital belongings.

If your contact information, or other information related to your account,

changes, you must notify us promptly and keep your information current.

You are responsible for safeguarding the password that you use to access the Services and you agree not to disclose your password to any third party. You acknowledge and agree that you, and not Bitcasa, are solely responsible for any activity using your account, whether or not you specifically authorized that activity. You must immediately notify Bitcasa of any unauthorized use of your account. You acknowledge that if you wish to protect your transmission of data to Bitcasa, it is your responsibility to use a secure connection to communicate with the Services.

Software and Updates

Some use of our Service requires you to download a client software package ("Software"). Bitcasa hereby grants you a limited, nonexclusive, nontransferable, revocable license to use the Software, solely for the purposes of accessing the Services. Your license to use the Software is automatically revoked if you violate these Terms. We hereby reserve all rights not expressly granted in these Terms. You must not modify, make derivative works of, reverse engineer or decompile the Software, nor attempt to do so, nor assist anyone else to do so. Our Services may update the Software on your device automatically when a new version is available and you hereby authorize Bitcasa to automatically update the Software on your device.

Bitcasa Property and Feedback

These terms do not grant you any right, title, or interest in the Services, Software, or the content in the Services. While we appreciate it when users send us feedback, please be aware that we may use any feedback, comments, or suggestions you send us or post in public parts of our site or Service (e.g. our forums) without any obligation to you. The Software and other technology we use to provide the Services are the sole property of Bitcasa and its suppliers and are protected by copyright, trademark, and other laws of both the United States and foreign countries. These Terms do not grant you any rights to use the Bitcasa trademarks, logos, domain names, or other brand features.

## Acceptable Use

You will not, and will not attempt to, misuse the Services, and will use the Services only in a manner consistent with the Bitcasa Acceptable Use Policy.

## Copyright

Bitcasa respects others' intellectual property and asks that you do too. We will respond to notices of alleged copyright infringement if they comply with the law and are properly provided to us. Such notices should be reported using our DMCA Process. We reserve the right to delete or disable content alleged to be infringing and have a policy for terminating repeat infringers. Our designated agent for notice of alleged copyright infringement on the Services is:

copyright@bitcasa.com

# Or, mail to:

Copyright Agent

Bitcasa, Inc.

1200 Park Place Ste 350

San Mateo, CA 94403

## Other Content and Other Users

The Services may contain links to third-party websites or resources. Bitcasa does not endorse and is not responsible or liable for their availability, accuracy, the related content, products, or services. You are solely responsible for your use of any such websites or resources. Also, if we provide you with any software under an open source license, there may be provisions in those licenses that expressly conflict with these Terms, in which case the open source provisions will apply.

Your interactions with other Service users are solely between you and such

user. You agree that Bitcasa will not be responsible for any loss or damage incurred as the result of any such interactions. If there is a dispute between you and any Service user, we are under no obligation to become involved. You hereby release and forever discharge us (and our officers, employees, agents, successors, and assigns) from, and hereby waive and relinquish, each and every past, present and future dispute, claim, controversy, demand, right, obligation, liability, action and cause of action of every kind and nature (including personal injuries, death, and property damage), that has arisen or arises directly or indirectly out of, or relates directly or indirectly to, any interactions with, or act or omission of, other Service users or any

third party sites that may be linked to on the Service. IF YOU ARE A CALIFORNIA RESIDENT, YOU HEREBY WAIVE CALIFORNIA CIVIL CODE SECTION 1542 IN CONNECTION WITH THE FOREGOING, WHICH STATES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Termination

Though we'd much rather you stay, you can stop using our Services any time by following the directions on the Services.

We reserve the right to suspend or end the Services at any time, with or without cause, and with or without notice. For example, we may suspend or terminate your use if we reasonably believe in our sole discretion that you are (a) not complying with these Terms or (b) using the Services in any way that would cause us legal liability or disrupt others' use of the Services. If we suspend or terminate your use, we will make commercially reasonable efforts to let you know in advance and help you retrieve data, though there may be some cases (for example, repeatedly or flagrantly violating these Terms, a court order, or danger to other users) where we may terminate access and delete your digital belongings immediately without prior

notice to you. All provisions of the Terms which by their nature should survive, shall survive termination of Services, including without limitation, ownership provisions, indemnification provisions, warranty disclaimers, access restrictions, and limitations of liability.

Bitcasa is Available "AS-IS"

Though we want to provide a great service, there are certain things about the service we can't promise. THE SERVICES AND SOFTWARE ARE PROVIDED "AS IS" AND "AS AVAILABLE" AND AT YOUR OWN RISK. WE (AND OUR SUPPLIERS) EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, OR CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING THE

WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, SECURITY, OR NON-INFRINGEMENT. WE (AND OUR SUPPLIERS) MAKE NO WARRANTY THAT THE SITE OR SERVICES: (A) WILL MEET YOUR REQUIREMENTS; (B) WILL BE AVAILABLE ON AN UNINTERRUPTED, TIMELY, SECURE, OR ERROR-FREE BASIS; OR (C) WILL BE ACCURATE, RELIABLE, FREE OF VIRUSES OR OTHER HARMFUL CODE, COMPLETE, LEGAL, OR SAFE.

BITCASA WILL HAVE NO RESPONSIBILITY FOR ANY HARM TO YOUR COMPUTER SYSTEM, LOSS OR CORRUPTION OF DATA, OR OTHER HARM THAT RESULTS FROM YOUR ACCESS TO OR USE OF THE SERVICES

OR SOFTWARE. SOME STATES DO NOT ALLOW THE TYPES OF DISCLAIMERS IN THIS SECTION, SO THEY MAY NOT APPLY TO YOU.

Indemnity

You agree to indemnify and hold Bitcasa (and its officers, employees, and agents) harmless, including costs and attorneys' fees, from any claim or demand made by any third party due to or arising out of (i) your use of the Service, (ii) your digital belongings, (iii) your violation of these Terms; or (iv) your violation of applicable laws or regulations. Bitcasa reserves the right, at your expense, to assume the exclusive defense and control of any matter for which you are required to indemnify us and you agree to cooperate with our defense of these claims. You

agree not to settle any matter without the prior written consent of Bitcasa. Bitcasa will use reasonable efforts to notify you of any such claim, action or proceeding upon becoming aware of it.

Limitation of Liability

TO THE FULLEST EXTENT PERMITTED BY LAW, IN NO EVENT WILL BITCASA, ITS AFFILIATES, OFFICERS, EMPLOYEES, AGENTS, SUPPLIERS, OR LICENSORS BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL (INCLUDING LOSS OF USE, DATA, BUSINESS, OR PROFITS) DAMAGES, REGARDLESS OF LEGAL THEORY, WHETHER OR NOT BITCASA HAS BEEN WARNED OF THE

POSSIBILITY OF SUCH DAMAGES, AND EVEN IF A REMEDY FAILS OF ITS ESSENTIAL PURPOSE.BITCASA'S (AND OUR SUPPLIERS') AGGREGATE LIABILITY TO YOU FOR ANY AND ALL CLAIMS RELATING TO THE SERVICES IS LIMITED TO THE GREATER OR $20 OR THE AMOUNTS PAID BY YOU TO BITCASA FOR THE PAST THREE MONTHS OF THE SERVICES IN QUESTION. THE EXISTENCE OF MORE THAN ONE CLAIM WILL NOT ENLARGE THIS LIMIT. SOME STATES DO NOT ALLOW THE TYPES OF LIMITATIONS IN THIS PARAGRAPH, SO THEY MAY NOT APPLY TO YOU.

Modifications

We may revise these Terms in our sole discretion from time to time. When

changes are made, we will make the most current version available on our website and will update the "Last Updated" date above. If a revision, in our sole discretion, is material we will notify you via the email address associated with your account. Any changes to the Terms will be effective immediately for new users of the Services and will be effective thirty (30) days after posting notice of such changes on the Service for existing users. By continuing to access or use the Services after revisions become effective, you agree to be bound by the revised Terms. If you do not agree to the new terms, please stop using the Services.

Miscellaneous Legal Terms

These Terms and the use of the services and software will be governed by

California law except for its conflicts of laws principles. All claims arising out of or relating to these Terms or the Services or software must be litigated exclusively in the federal or state courts of Santa Clara county, California, and both parties consent to venue and personal jurisdiction there. These Terms constitute the entire and exclusive agreement between you and Bitcasa with respect to the Services, and supersede and replace any other agreements, terms and conditions applicable to the Services. These Terms create no third party beneficiary rights. Bitcasa's failure to enforce a provision is not a waiver of its right to do so later. If a provision is found unenforceable the remaining provisions of the Agreement will remain in full effect

and an enforceable term will be substituted reflecting our intent as closely as possible. You may not assign any of your rights in these Terms, and any such attempt is void, but Bitcasa may assign its rights to any of its affiliates or subsidiaries, or to any successor in interest of any business associated with the Services. Bitcasa and you are not legal partners or agents; instead, our relationship is that of independent contractors.

International Terms

Choice of Language. It is the express wish of the parties that the Terms and all related documents have been drawn up in English. C'est law volone expresse des parties que la presente convention ainsi

que les documents qui s'y rattacent soient rediges en anglais.

United Kingdom. A third party who is not a party to the Terms has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any provision of the Terms, but this does not affect any right or remedy of such third party which exists or is available apart from that Act.

Germany. Notwithstanding anything to the contrary in these Terms, Bitcasa is also not liable for acts of simple negligence (unless they cause injuries to or death of any person), except when they are caused by a breach of any substantial contractual obligations (vertragswesentliche Pflichten).

English (US)

© 2014 Bitcasa.

Download

Features

Pricing

Terms & Privacy

Help Center

CloudFS APIs

Turn-key Drive

How It Works

CloudFS Support

Contact Us

About Bitcasa

Careers

Contact

Blog

Facebook

Twitter

Press